Carlos J. F. Ramos, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent.

Submitted on briefs, June 8, 1979, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*David A. Searles* and *Peter J. Pinnola,* for appellant.

*Larrick B. Stapleton,* for appellee.

OPINION BY JUDGE WILKINSON, JR., July 13, 1979:

This is a petition for review from an Adjudication and Order of the Pennsylvania State Horse Racing Commission (Commission) suspending petitioner's trainer's license for a period of five years from the date of the original ruling by the Board of Stewards at Keystone Race Track. We affirm.

One question and one question alone is raised— was the five year suspension ordered by the Commission supported by substantial evidence?

We have carefully read the relatively short (111 typed pages) record and the exhibits, including notably a signed statement of petitioner. The facts are that petitioner was charged, *inter alia,*[1] with possession of certain hypodermic syringes, hypodermic needles, and injectable drugs, referred to by petitioner as prohibited drug paraphernalia. This drug paraphernalia was found in a "Murry's Steaks" bag in a search of room 16, Dormitory No. 12, at Keystone Race Track. Room 16, together with room 19, had been assigned for use by two of petitioner's grooms, neither of whom were in his employ at the time the drug paraphernalia was found in the "Murry's Steaks" bag in room 16. One groom, Rufen Rosado, who had occupied room 16 testified that he had vacated room 16 and removed all his belongings before the drug paraphernalia was found. He testified he had seen the petitioner with the

---

[1] The Notice of the hearing before the Board of Stewards contained other charges but the Commission, expressly because of the equivocal nature of the testimony on them and the "apparent agreement worked out" did not reach these charges. They did not appear in the briefs or argument before this Court.

drug paraphernalia in the "Murry's Steaks" bag at barn 25, while he was working for petitioner. He testified further that he had held horses while the petitioner used the drug paraphernalia.

A. I used to see him stick the horses with those things.

Q. Indicating the syringes in Exhibit 3. [The 'Murry's Steaks' bag] Do you mean you saw him injecting something into a horse?

A. Yes.

Petitioner would have the Commission discount the credibility of this testimony as being from a disgruntled employee who had been *fired*. The employee testified he had *quit* because he had not been paid. This issue of whether the groom was fired or quit, relative as to credibility, was obviously for the fact finder, the Commission. However, we note that in his memorandum submitted to the Commission by petitioner it is stated—"Room 16 at the time was assigned to one Ruben Rosado, a groom formerly in Mr. Ramos' employ. Approximately a week before the search of his room Mr. Rosado quit without informing Mr. Ramos." This is entirely contrary to petitioner's testimony before the Commission that he fired Mr. Rosado.

Another vital factual issue resolved by the Commission against petitioner is whether he was using room 16 at the time the search and find was made. Petitioner admitted using room 19 but at the time he testified at the hearing before the Commission denied using room 16. However, in the statement signed on the date the search and find was made he said he used room 16 to change his clothes and had been in it the day before. In addition to signing the statement, witnessed by three security personnel, the petitioner initialed typographical errors that had been corrected. He later testified that at the time he signed he orally pointed out the error in room number but did not note it on the

statement. Understandably the Commission did not find this explanation credible.

It is clear that petitioner's condition book was found in room 16 at the time of the search, along with the drug paraphernalia. No explanation was forthcoming on how it happened to be there if he was not occupying the room.

Finally, petitioner argues that the Commission abused its discretion in imposing such a severe penalty as a five year suspension. On the contrary, the Commission seems to have taken a very careful look at the penalty for it did not accept the Board of Stewards recommendation that it revoke petitioner's license.

Accordingly, we will enter the following

ORDER

AND Now, July 13, 1979, the Adjudication and Order of the Pennsylvania State Horse Racing Commission, dated June 5, 1978, in No. 78-026, suspending petitioner for a period of five years from the date of the original ruling by the Board of Stewards at Keystone Race Track is affirmed.